IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE SACRISTE | § | CIVIL ACTION NO: _____ |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| TEXAS A&M UNIVERSITY | § | |
| Defendant | § | (JURY DEMANDED) |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I.**

**PRELIMINARY STATEMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

This is a civil action brought by Stephanie Sacriste (Plaintiff) against Texas A&M University (Defendant) alleging violations of Title VII of the Civil Rights Act of 1964, as amended by Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e et seq. as amended, and the Americans with Disabilities Act, 42 U.S.C. §1210, et seq, as amended by the ADA Amendments Act of 2008 (ADAAA) and for cause of action would show the following:

**II.**

**PARTIES**

1. Plaintiff, Stephanie Sacriste, is an individual currently residing in Bexar County, Texas.

2. Defendant, Texas A&M University, is a public institution of higher education located in College Station, Texas. At all relevant times, Texas A&M University has been an employer within the meaning of Section 701(b) of Title VII, 42 USC §2000e(b). Texas A&M University may be served with citation by serving its President, Dr. M. Katherine

Banks, 1246 TAMU, Texas A&M University, College Station, Texas 77813-1246.

### III.

### JURISDICTION

3. This Court has jurisdiction because Plaintiff is asserting claims under federal law. Specifically. Plaintiff is asserting claims arising under Title VII, the Pregnancy Act and the ADAAA. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

4. Plaintiff has completed all condition precedent to filing this lawsuit. She filed this lawsuit within ninety days of receiving a Right to Sue letter from the Equal Employment Opportunities Commission.

### IV.

### VENUE

5. Venue is proper in the Houston Division of the Southern District of Texas because the events or omissions giving rise to the claims asserted occurred in this District. Therefore, venue is proper pursuant to 28 U.S.C. §1391 (b).

### V.

### STATEMENT OF FACTS

6. Plaintiff was hired on September 4, 2018, as the Director of Faculty and Academic Affairs. Dr. Amy Fairchild, the Associate Vice President for Faculty and Academic Affairs was Plaintiff's supervisor.

**Reduction in Authority**

7. In November of 2018, Dr. Fairchild determined that additional staff was needed to

provide technical support for the Department. Since Plaintiff would be supervising that employee, Dr. Fairchild assigned Plaintiff the responsibility to fill that position.

8. Plaintiff drafted and circulated the job description, reviewed applications and interviewed candidates. On February 8, 2019, Plaintiff selected the finalist. All that remained was the final screening.

9. On February 20, 2019, Plaintiff informed Dr. Fairchild and Wilhemina Hobbs, her human relations liaison, that she was pregnant.

10. Three working days later, on February 25, 2019, Dr. Fairchild suddenly changed her mind and told Plaintiff that she was considering having other employees reinterview the candidates and might not allow Plaintiff to supervise the new hire.

11. On March 8, 2019, Dr. Fairchild abruptly closed the position depriving Plaintiff of the promised assistant.

**Isolated workstation**

12. Since she began working for Texas A&M, Plaintiff had commuted from her residence in Austin to College Station. A mold situation developed in that residence forcing Plaintiff to move temporarily to a hotel. Because of the disruption in Plaintiff's life, Dr. Fairchild graciously allowed Plaintiff to work remotely.

13. After Plaintiff returned to her residence, Dr. Fairchild suggested she avoid the long commute by working at an alternative work location (AWL) in Defendant's campus in Round Rock, Texas. Plaintiff accepted the AWL offer, but still commuted two or three times per week to the main campus where she worked from her office which was situated amidst her colleagues.

14. However, in the first week of March, less than one month after she learned of Plaintiff's pregnancy, Dr. Fairchild cancelled the AWL and ordered Plaintiff to return full time to College Station beginning April1st.

15. Then without talking to Plaintiff, Dr. Fairchild moved Plaintiff's office to a small room located between the breakroom and the bathrooms, isolated from her colleagues.

16. On March 26th, Plaintiff was notified by an administrator that Dr. Fairchild had moved her office.

### Impeding sick leave pool benefits

17. On April 1, 2019, Plaintiff's doctor diagnosed her with hyperemesis gravidarum related to her pregnancy and ordered immediate bed rest. Plaintiff thereupon took medical leave.

18. While on medical leave, Plaintiff learned that Defendant has a sick leave pool benefit policy. Neither Dr. Fairchild, Plaintiff's supervisor, nor Ms. Hobbs, Plaintiff's HR contact provided Plaintiff with this important information.

19. On April 10, 2019, Plaintiff sent a fax to Dr. Fairchild, Ms. Hobbs and Defendant's benefits office stating her desire to utilize the sick leave pool. Plaintiff's doctor also faxed a certificate attesting that Plaintiff would require a medical reevaluation on May 20, 2019, before being able to return to work.

20. Defendant has a policy requiring a review within ten days of an employee's request for sick leave pool benefits. On April 21, 2019, Plaintiff contacted Dr. Fairchild and Ms. Hobbs to inquire if they had received her sick leave pool documents.

21. On April 22, 2019, Dr. Fairchild responded that because of a problem with the fax

machine, neither she nor Ms. Hobbs had received Plaintiff's request. Plaintiff spoke with Ms. Hobbs and asked if she could either send the paperwork by email or to another fax machine. Ms. Hobbs replied that she would only allow the information to be sent by email as a last resort. Plaintiff's doctor then refaxed the medical certificate.

22. On April 23, 2019, Ms. Hobbs contacted the Plaintiff and informed her that the sick leave request would be denied because she had not yet received Plaintiff's paperwork.

23. At approximately 4:37 P.M. on April 23, 2019, Plaintiff again emailed and faxed the documents that she had received from her doctor.

24. At 5:25 P.M. Ms. Hobbs acknowledged receiving the documents and promised to send them to Human Resources but advised that she would need to talk to Plaintiff's doctor the following morning.

25. Plaintiff was fearful that she would not be able to access the sick leave funds which she desperately needed, so she made repeated calls, day after day, seeking an update. Finally, on May 14, 2019, at 3:44 P.M. Ms. Hobbs sent Plaintiff an email denying her request. She gave no explanation.

## Summary Termination

26. Two minutes later, at 3:46 P.M., Ms. Hobbs sent Plaintiff a second email informing her that she had been fired, again with no explanation.

## VI.

## CAUSES OF ACTION:

## PREGNANCY DISCRIMINATION IN VIOLATION OF THE PDA

27. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

28. Plaintiff was pregnant at the time of Defendant's decision to terminate her employment and failure to provide her accommodations.

29. Plaintiff was qualified for her position.

30. Plaintiff suffered an adverse employment action.

31. Plaintiff's pregnancy was a factor in Defendant's decision to take adverse employment action against Plaintiff when it did.

32. Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

33. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

34. Plaintiff was pregnant at the time of Defendant's decision to terminate her employment and failure to provide her accommodations.

35. Plaintiff was qualified for her position.

36. Plaintiff suffered an adverse employment action.

37. Plaintiff's pregnancy was a factor in Defendant's decision to take adverse employment action against Plaintiff when it did. The Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and/or the Texas Commission on Human Rights Act, Texas Labor Code § 21.001 *et seq.*

## VII.

### DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA

38. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

39. Defendant violated the ADAAA by discharging Plaintiff. 42 U.S.C. § 12101 *et seq.*;

40. 42 U.S.C. §12112 makes it unlawful for an employer to discriminate against an individual with respect to her employment because the employer regards the individual as a person with a disability.

41. Defendant is an employer under the ADAAA. Defendant is engaged in an industry affecting commerce and had more than 15 employees in each of 20 or more calendar weeks during the year in which Plaintiff was terminated, or in the preceding calendar year.

42. At all times relevant to this suit, Plaintiff was a qualified individual with a disability, was a qualified individual with a record of a disability and/or was regarded by the Defendant as a person with a disability.

43. Plaintiff was qualified for and could perform the essential functions of her job at the time of her termination, with reasonable accommodations.

44. Plaintiff was meeting her employer's expectations.

45. Plaintiff was terminated as a direct result of her disability, her record of having a disability, and/or because Defendant regarded Plaintiff as a person with a disability.

46. Defendant violated the ADAAA by intentionally refusing to accommodate Plaintiff's disability, retaliating against her for seeking accommodations and for taking Leave and by discriminating against Plaintiff because of her disability by terminating Plaintiff's employment. Plaintiff's disability was a determining or motivating factor in Defendant's decision to terminate Plaintiffs' employment.

Plaintiffs' disability, record of having a disability, and/or Defendant's regarding Plaintiff as a person with a disability moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

## VIII.

## DAMAGES

47. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of earning capacity, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## IX.

## COMPENSATORY DAMAGES

48. Plaintiff seeks for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, job search expenses, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## X.

## PUNITIVE DAMAGES

49. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## XI.

## ATTORNEYS' FEES AND EXPERT FEES

50. Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally seeks expert fees.

## XII

## DEMAND FOR JURY TRIAL

51. Plaintiff demands a trial by jury of all the issues in this case and tenders herewith the requisite jury fee.

## XIII

## PRAYER FOR RELIEF

WHEREFORE, cause having been shown, Plaintiff prays for, on trial of this just cause, judgment against Defendant as follows:

a. All actual damages, including but not limited to past and future lost wages, past and future lost benefits, lost benefits of contract and consequential damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre-judgment and post-judgment interest as allowed by law;

e. Court costs and expenses, and litigation expenses, including but not limited to the expenses for any expert witnesses;

f. Equitable relief, including front pay;

g. Attorneys' fees; and

h. Any such further relief as the Court deems proper and just under the circumstances.

    Respectfully submitted,

    GREENSTEIN & KOLKER
    1006 E. Cesar Chavez
    Austin, Texas 78702
    (512) 472-6270
    (512) 472-8263 fax
    malcolm@greensteinandkolker.com

    By: Malcolm Greenstein
    Malcolm Greenstein
    Federal I.D. No. 34054
    State Bar No. 08403300
    **ATTORNEY FOR PLAINTIFF**