IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| STEPHANIE SACRISTE | § | CIVIL ACTION NO: 4:21-CV-01805 |
|---|---|---|
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| TEXAS A&M UNIVERSITY, and | § | |
| DR. M. KATHERINE BANKS | § | (JURY DEMANDED) |

**PLAINTIFF'S THIRD AMENDED ORIGINAL COMPLAINT**

**I.**

**PRELIMINARY STATEMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

This is a civil action brought by Stephanie Sacriste (Plaintiff) against Texas A&M University (Texas A&M) and Dr. M. Katherine Banks, in her capacity as President of Texas A&M, alleging violations of Title VII of the Civil Rights Act of 1964, .as amended by Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e et seq. as amended, and the Americans with Disabilities Act, 42 U.S.C. §1210, et seq, as amended by the ADA Amendments Act of 2008 (ADAAA) and for cause of action would show the following:

**II.**

**PARTIES**

1. Plaintiff, Stephanie Sacriste, is an individual currently residing in Bexar County, Texas.
2. Texas A&M, Texas A&M University, is a public institution of higher education located in College Station, Texas. At all relevant times, Texas A&M University has been an employer within the meaning of Section 701(b) of Title VII, 42 USC §2000e(b).

3. Dr. M. Katherine Banks is the president of Texas A&M University. She is sued in her official capacity.

## III.

## JURISDICTION

4. This Court has jurisdiction because Plaintiff is asserting claims under federal law. Specifically. Plaintiff is asserting claims arising under Title VII and the Pregnancy Act, Title I of the Americans with Disabilities Act of 1990 (ADA) and the ADA Amendments Act of 2008, (ADAAA). Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

5. Plaintiff has completed all condition precedent to filing this lawsuit. She filed this lawsuit within ninety days of receiving a Right to Sue letter from the Equal Employment Opportunities Commission.

## IV.

## VENUE

6. Venue is proper in the Houston Division of the Southern District of Texas because the events or omissions giving rise to the claims asserted occurred in this District. Therefore, venue is proper pursuant to 28 U.S.C. §1391 (b).

## V.

## STATEMENT OF FACTS

7. Plaintiff was hired by Texas A&M on September 4, 2018, as the Director of Faculty and Academic Affairs. Dr. Amy Fairchild, the Associate Vice President for Faculty and Academic Affairs, was Plaintiff's supervisor.

## Reduction in Authority

8. In November of 2018, Dr. Fairchild determined that additional staff was needed to provide technical support for the Department. Since Plaintiff would be supervising that employee, Dr. Fairchild assigned Plaintiff the responsibility to fill that position.

9. Plaintiff drafted and circulated the job description, reviewed applications and interviewed candidates. On February 8, 2019, Plaintiff selected the finalist. All that remained was the final screening.

10. On February 20, 2019, Plaintiff informed Dr. Fairchild and Wilhemina Hobbs, her human relations liaison, that she was pregnant.

11. Three working days later, on February 25, 2019, Dr. Fairchild suddenly changed her mind and told Plaintiff that she was considering having other employees reinterview the candidates and might not allow Plaintiff to supervise the new hire.

12. On March 8, 2019, Dr. Fairchild abruptly closed the position depriving Plaintiff of the promised assistant.

## Isolated workstation

13. Since she began working for Texas A&M, Plaintiff had commuted from her residence in Austin to College Station. A mold situation developed in that residence forcing Plaintiff to move temporarily to a hotel. Because of the disruption in Plaintiff's life, Dr. Fairchild graciously allowed Plaintiff to work remotely.

14. After Plaintiff returned to her residence, Dr. Fairchild suggested she avoid the long commute by working at an alternative work location (AWL) in Texas A&M's campus in Round Rock, Texas. Plaintiff accepted the AWL offer, but still commuted two or three

times per week to the main campus where she worked from her office which was situated amidst her colleagues.

15. However, in the first week of March, less than one month after she learned of Plaintiff's pregnancy, Dr. Fairchild cancelled the AWL and ordered Plaintiff to return full time to College Station beginning April1st.

16. Then without talking to Plaintiff, Dr. Fairchild moved Plaintiff's office to a small room located between the breakroom and the bathrooms, isolated from her colleagues.

17. On March 26th, Plaintiff was notified by an administrator that Dr. Fairchild had moved her office.

## Impeding sick leave pool benefits

18. On April 1, 2019, Plaintiff's doctor diagnosed her with hyperemesis gravidarum related to her pregnancy and ordered immediate bed rest. Plaintiff thereupon took medical leave.

19. While on medical leave, Plaintiff learned that Texas A&M has a sick leave pool benefit policy. Neither Dr. Fairchild, Plaintiff's supervisor, nor Ms. Hobbs, Plaintiff's HR contact, provided Plaintiff with this important information.

20. On April 10, 2019, Plaintiff sent a fax to Dr. Fairchild, Ms. Hobbs and Texas A&M's benefits office stating that she wanted to utilize the sick leave pool. Plaintiff's doctor also faxed a certificate attesting that Plaintiff would require a medical reevaluation on May 20, 2019, before being able to return to work.

21. Texas A&M has a policy requiring a review within ten days of an employee's request for sick leave pool benefits. On April 21, 2019, Plaintiff contacted Dr. Fairchild and Ms.

Hobbs to inquire if they had received her sick leave pool documents.

22. On April 22, 2019, Dr. Fairchild responded that because of a problem with the fax machine, neither she nor Ms. Hobbs had received Plaintiff's request. Plaintiff spoke with Ms. Hobbs and asked if she could either send the paperwork by email or to another fax machine. Ms. Hobbs replied that she would only allow the information to be sent by email as a last resort. Plaintiff's doctor then refaxed the medical certificate.

23. On April 23, 2019, Ms. Hobbs contacted the Plaintiff and informed her that the sick leave request would be denied because she had not yet received Plaintiff's paperwork.

24. At approximately 4:37 P.M. on April 23, 2019, Plaintiff again emailed and faxed the documents that she had received from her doctor.

25. At 5:25 P.M. Ms. Hobbs acknowledged receiving the documents and promised to send them to Human Resources but advised that she would need to talk to Plaintiff's doctor the following morning.

26. Plaintiff was fearful that she would not be able to access the sick leave funds which she desperately needed, so she made repeated calls, day after day, seeking an update. Finally, on May 14, 2019, at 3:44 P.M. Ms. Hobbs sent Plaintiff an email denying her request. She gave no explanation.

## Summary Termination

27. Two minutes later, at 3:46 P.M., Ms. Hobbs sent Plaintiff a second email informing her that she had been fired, again with no explanation.

## VI.
## CAUSES OF ACTION:

### PREGNANCY DISCRIMINATION IN VIOLATION OF THE PDA

28. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

29. Plaintiff was pregnant when Texas A&M terminated her employment and denied her accommodations.

30. Plaintiff was qualified for her position.

31. Plaintiff suffered an adverse employment action.

32. Plaintiff's pregnancy was a factor in Texas A&M's decision to take adverse employment action against Plaintiff when it did.

33. Texas A&M violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

34. As a result of the unlawful conduct of Texas A&M, Plaintiff has suffered past and future lost income, past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of earning capacity, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses

### VII.

### DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA-TITLE I

35. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

36. 42 U.S.C. §12112 makes it unlawful for an employer to discriminate against an individual with respect to her employment because the employer regards the individual as a person with a disability.

37. Texas A&M is an employer under the ADAAA. Texas A&M is engaged in an industry

affecting commerce and had more than 15 employees in each of 20 or more calendar weeks during the year in which Plaintiff was terminated, or in the preceding calendar year.

38. At all times relevant to this suit, Plaintiff was a qualified individual with a disability, was a qualified individual with a record of a disability and/or was regarded by the Texas A&M as a person with a disability.

39. Plaintiff was qualified for and could perform the essential functions of her job at the time of her termination, with reasonable accommodations.

40. Plaintiff was meeting her employer's expectations.

41. Texas A&M terminated Plaintiff as a direct result of her disability, her record of having a disability, and/or because Texas A&M regarded Plaintiff as a person with a disability.

42. Texas A&M violated the ADAAA by intentionally refusing to accommodate Plaintiff's disability, retaliating against her for seeking accommodations and for taking leave and by discriminating against Plaintiff because of her disability by terminating her employment. Plaintiff's disability was a determining or motivating factor in Texas A&M's decision to terminate Plaintiffs' employment. Plaintiffs' disability, record of having a disability, and/or Texas A&M's regarding Plaintiff as a person with a disability moved Texas A&M toward its decision or was a factor that played a part in Texas A&M's employment decisions as to Plaintiff.

43. Plaintiff seeks an order enjoining Defendant Banks in her official capacity

from continuing to violate Plaintiff's federal rights and requiring her to reinstate Plaintiff to her former position.

## VIII.

## SECTION 504 OF THE REHABILITATION ACT OF 1973

44. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

45. Section 504 states "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance "29 U.S.C. § 794(a).

46. At all times herein relevant Plaintiff was an individual with a disability under 29 U.S.C. § 705(20)(B).

47. Texas A&M University is a "program or activity receiving Federal financial assistance" because it is "a department, agency, special purpose district, or other instrumentality of a State or of a local government," and it receives federal financial assistance, including but not limited to federal prisoner expense reimbursements. 29 U.S.C. § 794(b)(l), (4).

48. Texas A&M knowingly and intentionally failed to provide Plaintiff with a reasonable accommodation and terminated Plaintiff because of her disability, resulting in her being denied the same benefits and services available to employees without disabilities, and thereby violated Plaintiff's rights under Section 504

49. As a result of the Texas A&M's violation of Section 504, Plaintiff has suffered discrimination; exclusion from services, benefits, activities, programs, and privileges;

loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, and injury to her physical and mental health.

50. As a result of the unlawful conduct of Texas A&M, Plaintiff has suffered past and future lost income, past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of earning capacity, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## IX.

## ATTORNEYS' FEES AND EXPERT FEES

51. For all causes of action alleged herein, Plaintiff seeks all reasonable and necessary attorneys' fees, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally seeks expert fees.

## X.

## DEMAND FOR JURY TRIAL

52. Plaintiff demands a trial by jury of all the issues in this case and tenders herewith the requisite jury fee.

## XI

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Grant a permanent injunction against Defendant Banks (under the ADA) in her official capacity only and against Texas A&M (under § 504) enjoining them from violating Plaintiff's federal rights as described above.

B. Place Plaintiff in a comparable position to one she would have had absent Defendant's improper acts.

C. Award Plaintiff appropriate back-pay with prejudgment interest. (under § 504 and Title VII)

D. Award Plaintiff compensatory damages for her past and future pecuniary and non-pecuniary losses. (under § 504 and Title VII)

E. Award Plaintiff reasonable attorney fees, costs and litigation expenses.

F. Grant such further relief as the Court deems proper and just.

    Respectfully submitted,

    GREENSTEIN & KOLKER
    1006 E. Cesar Chavez
    Austin, Texas 78702
    (512) 472-6270
    (512) 472-8263 fax
    malcolm@greensteinandkolker.com

    /s/Malcolm Greenstein
    By: Malcolm Greenstein
    Federal I.D. No. 34054
    State Bar No. 08403300

    /s/ Nitin Sud
    Nit Sud
    SUD LAW P.C.
    State Bar No. 24051399
    6750 West Loop South
    Suite 920
    Bellaire, TX 77401
    Phone: 832-623-6420
    Fax: 832-304-2552
    Email: nsud@sudemploymentlaw.com
    **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served upon all parties through CM/ECF on January 28, 2022.

                                /s/Malcolm Greenstein
                                MALCOLM GREENSTEIN